EDNA YARRINGTON, Plaintiff, v. JOSEPH F. THORNBURG, ROBERT JOSEPH DVORAK and FRANK MULLER, Defendants.

(*March* 9, 1964.)

STIFTEL, J., sitting.

*Bruce M. Stargatt* (of Morford, Young and Conaway) for plaintiff.

*Warren B. Burt* (of Prickett and Prickett) for defendant Thornburg.

*George L. Sands* for defendants Dvorak and Muller.

Superior Court for New Castle County, No. 1451, Civil Action, 1962.

STIFTEL, Judge.

An accident arose from a collision between an automobile owned and driven by defendant Joseph Thornburg and a small pick-up truck owned by Robert Joseph Dvorak and driven by defendant Frank Muller. Plaintiff was a guest passenger in the Thornburg vehicle. An action was brought to recover damages for personal injuries based upon the concurrent wanton misconduct of the host driver, Thornburg, and the negligence of the driver of the truck. A tsial was held and the jury returned a plaintiff's verdict of $40,000 against the joint tortfeasors, assessing responsibility between the tortfeasors of $36,-000 for Thornburg and $4,000 for Dvorak and Muller.

At the time of the accident, Thornburg was insured with State Farm Mutual Insurance Company. The policy provided coverage for liability for bodily injury up to $10,000[1] and in addition contained an agreement of the insurer to make medical payments in an amount not to exceed $5,000[2] for any passenger injured in the Thornburg vehicle.

Thornburg's insurance carrier paid plaintiff the sum of $5,000 for medical expenses under the terms of the medical payments clause of his insurance policy. Defendants claim that plaintiff should not be able to recover against them for the same medical expenses in her suit for personal injuries. On the other hand, plaintiff contends that she is entitled to recover for the same medical expenses in her suit for personal injuries against the de-

---

[1]This policy information furnished voluntarily by Thornburg post trial.

[2]Applicable portions of medical payments clause:

"Coverage M—Major Medical Payments:

    *        *        *        *        *

"Limit of Liability—Coverage M: The company's limit of liability shall not exceed $1,000 for funeral expenses incurred for each person, and subject to this provision, $5,000 for all expenses incurred for each person who sustains bodily injury in any one accident."

fendants since the insurer was obligated to make this payment irrespective of any tort liability on the part of the defendants.

The question raised is not whether Thornburg's insurance carrier must pay the $5,000 medical expenses and the full amount of its liability coverage under its contract with its insured, Thornburg. The insurer's responsibility is not before me for decision since Thornburg's insurance company is not a party in this case. The question is whether defendants must pay for medical expenses after Thornburg's insurance carrier has already paid this sum under the medical payments clause coverage.

Thornburg paid premiums on his insurance policy which required his insurance carrier to make medical payments regardless of liability. It was his premiums that helped to create the fund from which these medical payments were made. The plaintiff played no part in creating this separate fund. Thus, this case differs substantially from those situations where payment is made by a source wholly independent of the defendant, such as Blue Cross; *Leon v. United States*, D.C.E.D.N.Y., 193 F.Supp. 8; or some other insurance program. Lee R. West, "The Collateral Source Rule Sans Subrogation, A Plaintiff's Windfall", 16 Okla.L.Rev. 395, 401; Richard C. Maxwell, "The Collateral Source Rule in the American Law of Damages"; 46 Minn.L.Rev. 669, 672; but compare *Evans v. Pennsylvania R. R.*, 3 Cir., 255 F.2d 205, 70 A.L.R. 2d 158.

Plaintiff relies on the recent case of *Truitt v. Gaines*, D.C.Del., 199 F.Supp. 143 (August 1961), to support her argument for double recovery of medical expenses. In Truitt, defendant's automobile was insured for both liability and medical payments. Defendant's insurer paid $500 each to the injured mother and injured son. The plaintiff-father, legally responsible for the medical expen-

ses incurred by his wife and son, sued, seeking as part of his damages the medical expenses of $1977.55. Defendant contended that since plaintiff had already received $1,000 under the medical payments clause of his policy, any award given which included medical expenses should be reduced by that amount. Resisting this argument, the plaintiff-husband invoked the collateral-source doctrine, which forbids a tortfeasor from benefiting by independent contributions from a collateral source. The District Court found no Delaware case in point[3] and, after examining out-of-state authorities, came to the conclusion that they uniformly held that under the collateral-source rule, plaintiffs were entitled to recover for medical expenses regardless of any payment by the defendant's insurer under a separate and divisible medical payments contract. See, also, 28 NACCA Law Journal 89-90. The Delaware District Court rested its decision primarily on *Severson v. Milwaukee Automobile Ins. Co.*, 265 Wis. 488, 61 N.W.2d 872, 42 A.L.R.2d 976, and on certain Louisiana Intermediate Appellate Court cases, e.g., *Distefano v. Delta Fire & Casualty Co.*, La.App. 1 Cir., 98 So.2d 310; *Dumas v. United States Fidelity & Guaranty Co.*, La.App., 3 Cir., 125 So.2d 12; *Bordelon v. Great American Indemnity Co.*, La.App. 3 Cir., 124 So.2d 634. At the time of the Truitt decision, most cases supported the doctrine of double recovery. Louisiana, in all probability, had more decisions on the subject matter, especially where an insurance company was a party, than any other jurisdiction. There was a conflict in the decisions, some circuits denying double recovery, *Hawayek v. Simmons*, La.App. 5 Cir., 91 So.2d 49, 61 A.L.R.2d 1254, and a greater number of circuits permitting double re-

---

[3]In administering its diversity jurisdiction, the Truitt Court was required to apply the law of Delaware, where the tort occurred, in identifying items of injury or loss which were recoverable as damages. See, *Medd v. Westcott* (D.C.N.D., Iowa, E.D.), 32 F.R.D. 25, 27.

covery, *Distefano v. Delta Fire & Casualty Co.*, supra; *Dumas v. United States Fidelity & Guaranty Co.*, supra; *Warren v. Fidelity Mutual Ins. Co.*, La.App. 1 Cir., 99 So. 2d 382. These last cited cases no longer appear to be controlling in Louisiana. *Wise v. Agricultural Insurance Co.*, La.App. 2 Cir., 140 So.2d 662, 666 (June 1962). In the recent case of *Gunter v. Lord*, 242 La. 943, 140 So.2d 11, the Supreme Court of Louisiana reviewed the Louisiana decisions and disavowed those cases permitting double recovery.[4] See, also, *Wise v. Agricultural Insurance Co.*, supra, at p. 666 of 140 So.2d.

The Severson case, supra, on which the Delaware District Court relied, held that the liability and medical payment provisions of the insurance policy provided totally distinct coverages, the Court holding, in effect, that the medical payments provision provided separate accident insurance. Thus, the insured passenger was able to recover medical expenses under the medical payments clause even though the insurance carrier had already paid a judgment which specifically included payment of medical expenses. This 1953 Wisconsin decision set the precedent in many jurisdictions. It was generally followed until recently,

---

[4]The language in part 2 (Expenses for Medical Services), condition 7, paragraph 2 of the Gunter policy provided as follows:

"The company may pay the injured person or any person or organization rendering the services and such payment shall reduce the amount payable hereunder for such injury."

This paragraph was similar to language used in *Bowers v. Hardware Mutual Castualty Co.*, La.App. 2d Cir., 119 So.2d 671, where double recovery was denied and where the Court stated (see footnote 4, *Gunter v. Lord*, p. 14 of 140 So.2d):

"* * * the policy provides that the amount payable under its general liability provision shall be reduced by payments made under the medical expenses features of the contract."

Gunter did not appear to rest its decision, however, on the special provision of this policy but appeared to be critical of the doctrine of double recovery. See *Wise v. Agricultural Insurance Co.*, supra, at p. 666 of 140 So.2d.

when a new trend began to evidence itself. *Wise v. Agricultural Ins. Co.*, supra; *Gunter v. Lord*, supra; *Tart v. Register*, 257 N.C. 161, 125 S.E.2d 754 (May 1962); *Dodds v. Bucknum*, D.C.App. 2 Dist., Div. 2, Calif., 29 Cal.Rptr. 393 (March 1963).

In Dodds, a guest passenger sued the host driver for his wilful misconduct and the Court held that the medical and hospital expenses incurred for treatment of the guest passenger and paid' for by the host's insurer under the medical payments clause, were not again recoverable by the guest in her action against the host motorist. As in the Truitt case, the plaintiff relied on *Severson v. Milwaukee Automobile Ins. Co.*, supra, but the Court held that case inapplicable because that action was between the injured person and the insurance company, which was not present in this case. In the process of arriving at its decision, the Court stated (at p. 397 of 29 Cal.Rptr.):

"It thus appears that if defendant had gone to the doctor and hospital of the plaintiff and had paid out of his own pocket the indebtedness that plaintiff had incurred on account of this accident, she could not have recovered them again from him. In other words, her recovery would be diminished by the amount personally paid by defendant. It can make no difference either in principle or in justice that defendant did not pay these bills out of his own pocket but that the source of such payments was insurance purchased by defendant with his own funds for such an eventuality. It would indeed be strange if a wrongdoer who has foresight enough to cover himself with insurance, and thus in fact cause the payment of any doctor and hospital bills which his wrongful act may make necessary, should be penalized, whereas the person who does not similarly provide a fund for such contingencies should obtain the benefit if, perchance, at the time

of the injury or thereafter he has the cash with which to pay and does in fact pay such expenses. It should therefore logically follow that if a wrongdoer provides a source or fund out of which the injured party's special damages are paid prior to trial the recovery of plaintiff is diminished to that extent.

"But where the payment is from a collateral source with which the wrongdoer has nothing to do and to which he did not contribute at all he will not get the windfall, and the recovery against him will not be diminished by the amount the injured party has received from the collateral source. (Oleck, Damages to Persons and Property, § 280)."

In *Tart r. Register,* supra, the Court held that guest passengers who received payment for hospital and doctor bills resulting from an automobile accident under the medical payments clause were not entitled to again recover these same expenses in the tort action against the owners and drivers of the automobiles. This Court refused to follow Truitt and commented as follows (at p. 764 of 125 S.E.2d 764) :

"* * * Consider the hypothetical, but quite probable, case where recovery is in excess of insurance limits, or a case where medical payments are provided by insurance and financial responsibility provided from defendant's personal assets; a court in such instances could not in good conscience sustain a double recovery for medical expenses. Our single recovery ruling in this case is to be limited to factual situations materially the same as the one here presented."

██ ██ Where a defendant himself furnishes or causes to be furnished medical expenses to a plaintiff, the collateral-source rule should not apply because the source of the benefits is not wholly independent of the defendant.

See, 25 C.J.S. Damages § 99, p. 647. Thus, where a defendant has paid premiums for medical coverage for a passenger, he should be credited with such payments in a tort suit against him. Thornburg caused the payment of medical expenses by his insurer by the payment of his premiums. This benefited plaintiff, and he is not required to again benefit the same plaintiff in a personal injury suit against him which includes the same medical expenses.

I do not concern myself with the provisions of Thornburg's insurance policy. The insurance company is not a party to this action; thus no construction of the policy is required. Fortuitously, in this action Thornburg, through his insurer, has made available certain provisions of his policy which indicate that he had a liability coverage limit of $10,000. The recovery against Thornburg, as one of the joint tortfeasors, was $40,000. It would appear that Thornburg's insurer is in no position to claim that it must pay plaintiff's medical expenses twice, since its policy limit is substantially less than the verdict exclusive of medical expenses. However, whether Thornburg's insurer must pay $10,000 under the liability provision and also $5,000 for medical payments is not for me to decide in this action since the contract responsibilities of Thornburg's insurer to Thornburg or to plaintiff are not an issue.

I conclude that Thornburg is not required to pay the same medical expenses which he has already caused to be paid by his insurer under the medical payments coverage. Consequently, defendant Thornburg is entitled to a credit against the recovery of plaintiff in this action and accordingly, the judgment will be properly modified so as to allow this credit.